Good morning, Your Honors. Morning, Mr. Moss. Steve Moss on behalf of Craig Sutton. This case involves a question of under what circumstances may a district court at a revocation hearing admit unsworn allegations of witnesses that are not there to cross-examine. It implicates the Sixth Amendment right to confrontation. And although this court has, in some instances, allowed for the admission of such testimony, the facts of this case do not fall within any of those prior precedents. Specifically, I'm talking about Martin and Farmer. Ms. Warren Is this one different because there were videos of these witnesses, interviews with the officers, and those were admitted into evidence, right? Mr. Moss Yes, they were. So the district court did have the opportunity to view those videotaped interrogations. Ms. Warren Does that matter? Because then you do have at least the district court having an ability to make a credibility determination, not just on the hearsay testimony of an officer of what they said, but actually watching the interviews him or herself? Mr. Moss I think it's a valid factor that the court did properly consider with regard to the reliability of those witnesses, and it certainly is the case that the district court had a better opportunity to gauge credibility based on those videotapes. However, we don't believe it's a sufficient factor for several reasons. In order to find good cause to dispense with the Sixth Amendment, the court needed to find, first of all, that live testimony would be difficult or expensive or some danger to an informant. With regard to the difficulty or the expense of securing this witness, absolutely no basis in the record to conclude that. One witness, Detective Buckley, testifies he went to the original home to try to find Nisha Douglas. Someone else lived there. He checked the file again and realized there was a new address for her near 43rd and Paseo. He went there on a single occasion. Music was on. The lights were on. He knocked on the door. No one responded. And that is the extent of what the government demonstrated of their attempts to secure just Nisha Douglas. There were no attempts to secure Ezekiel Douglas or Jermaine Oliver. The court admitted testimony of all three witnesses. So we would contend we don't even really get to the reliability factor, which would relate to the issue of whether or not the videotapes are sufficiently reliable. We really don't get there because the court, the government needs to show the first prong, and that is that the witnesses were unavailable, that it would have been difficult or expensive to bring them into court. And that simply is not shown in this case. In your view, is that the end of it then? Is that the end of the analysis? Yes. Yes. We believe you don't get to reliability based on the record in this case. Now, there is also a... Wasn't there though some evidence that the two witnesses feared the defendant? And that's, Judge Gardner, you anticipated my very next point. That is also a basis in addition to part of the first Bell factor regarding danger. The court must show danger to... I would say Bell's talking about maybe an anonymous informant. I don't know that Bell certainly would apply to this situation, but for the sake of argument, let's assume that it does. There's certainly a difference between danger and fear. There's a difference between danger to a witness and a witness not wanting to testify, or as the record indicates, these witnesses being uncooperative. So we believe under either of those aspects regarding the first Bell factor that the record is insufficient. A witness being uncooperative or being in fear is not the same thing as showing a danger to that witness. The other thing to point out, Judge, and this goes to the question of the reference to informants or anonymous witnesses. It's arguable that there's no distinction between them showing up in court and the admission of the videotapes. I don't believe the record supports a finding which would be necessary to admit these, that these witnesses were going to be in more peril, in more danger if they showed up in court, as opposed to just admitting the videotaped statements, which is what occurred in this case. So we believe, based on the record in this case, for this detective to simply go on one single occasion to find one of three witnesses, that that's not sufficient, and that also it's not sufficient for the record to, for the court to conclude that there would have been a danger to any of these three witnesses. And also with respect to the danger issue, that only, there is some basis for the court to conclude that Nisha Douglas and Ezekiel Douglas were fearful, but there's really no basis to conclude that Jermaine Oliver, there's absolutely no, no allegation that he was afraid in any way of Mr. Sutton. So for all of those reasons, we don't think the court should even proceed to the second step, which is the reliability. Now, Judge Kelly has raised, I think, a valid distinction as to why maybe this, the court in this case, was in a better position to evaluate credibility. Certainly that's a better position to look at videotapes than just to hear an officer recounting what that witness said. However, we believe this case is different than Farmer, than Martin, for a variety of reasons, which all speak volumes to the unreliability of these witnesses' statements. First of all, each witness lied repeatedly, not once. I think Buckley says at least 10 times. We have repeated and consistent fabrications by each witness. Secondly, each witness had a motive to fabricate. Nisha, Ezekiel, and Jermaine Oliver all participated in some way in either the assault or the cover-up of the victim, Tom Eisenbarth. Third, all three, Nisha and Ezekiel, at least, were both heavily intoxicated, either through drugs or alcohol or some combination. All of these three factors are very relevant to a court's determination of reliability, and these are adequate basis to distinguish the types of situations where the court did allow hearsay testimony in. When you look at the physical evidence in this case, it's overwhelming. There's blood, I mean, arguably Ezekiel's the one that dropped the Yukon off. It's found at Nisha's house. There's blood throughout the house. There's blood under the fingernails of both Nisha and Ezekiel Douglas. Nisha Davis has broken fingernails, which would be consistent with the struggle, and compare that physical evidence, which is undisputed, with the statement that Nisha gave, which is, oh, I was passed, I was in and out, I was losing consciousness, I hurt a little bit, but there's absolutely no indication of anything, any explanation for why she would have blood on her fingernails, why she would have some broken fingernails. So that as well, we have overwhelming physical evidence implicating both Nisha and Ezekiel, which further supports our distinction of saying these witnesses had a very serious and significant motive and incentive to fabricate and cast the blame, and also to be uncooperative if asked to come and testify. So for all those reasons, judges, we think the court's ruling should be reversed. Thank you. Thank you, Mr. Moss. May it please the court, my name is Mike Green, I represent the United States in this case, and we believe that the court did not abuse its discretion in finding good cause for the three witnesses, Clinicia Douglas, Ezekiel Douglas, and Jermaine Owens, to not actually and order, provoking the supervisor release, found that, well first of all, found that two of the witnesses, Ezekiel Douglas and Clinicia Douglas, had reason to be terrified, were credibly terrified, was the district court's words, were credibly terrified of the defendant, Mr. Sutton. The evidence was that Ms. Douglas had been severely assaulted by Mr. Sutton some years prior, he had severely hurt her. Ezekiel Douglas also was aware of that fact. Ezekiel Douglas testified that in the trip to the hospital when he was following the car, Tom Eisenbarth's car, being driven by Craig Sutton as they were taking the unconscious Mr. Eisenbarth to the hospital, Mr. Ezekiel Douglas was following in the blazer, that there were associates of the defendant, Mr. Sutton, in this car, they had guns, this is on pages 27 and 28 of the hearing transcript, they had guns, they were talking about the things they do to people, so there was obviously more than sufficient evidence to find that these two witnesses had reason to be terrified. Is it different to say what you've just said, that there's enough in the evidence to conclude that they would have reason to be fearful if they came in to testify? Is that different from actually having a finding that those particular witnesses said, we are very fearful, we don't want to come in and testify? Well, I believe the district court basically did that in its memorandum. It found that they were credibly terrified of the defendant, Mr. Sutton. So in your view, the district court can make those conclusions? It could be that neither one was particularly fearful or not fearful enough, maybe they would have wanted to come in and testify against somebody that they thought might then go into custody. That could be flipped in a couple of different ways. I'm just interested in whether we really need that to come from the witnesses themselves, or whether the court can look at the record and say, well, I think that they would be fearful, or I think they could be fearful. I believe the court can look at the record. There was evidence. They told the police officer in the interview that they were, well, that Mr. Ezekiel Douglas said he was terrified of his associates with the guns, associates of the defendant, and Ms. Clinicia Douglas said that she was afraid of the defendant. So that was evidence that came through the interviews that was before the district court. I think this court can look at the record itself, if it's sufficiently developed, and also find that the good cause has been established, that these witnesses had reason to be afraid. Counsel, how would you address the argument that there's no reason to believe that Mr. Sutton would be more likely to retaliate for live testimony than recorded testimony? He's going to know either way who testified against him. That's true, but there's a difference when you're sitting there and these people are getting up on the witness stand in front of you and testifying to put you back in jail, and there's a confrontation there. I think that that does heighten the fear level of the person who has a reason to be afraid. In the United States v. Sims, 757-Fed-3rd-728, and then on page 733, this court said, many cases have held good cause for not producing a declarant is shown when the defendant has a violent history that makes reprisal a possibility. So there, this court was saying that when a person, the defendant, has a violent history that makes reprisal just a possibility, that good cause can be shown just from that for not producing the declarant. And that's what you have here. By focusing on the fear of testifying, are you implicitly saying that, well, the efforts that the officers took to try to subpoena these folks standing alone would not be enough to make them unavailable, that you need the combination? Well, I think the efforts to bring, there was testimony that the officer went to Clinicia Douglas' residence on a couple of occasions. In candor, the district court found in its memorandum order that it didn't find the efforts to be particularly vigorous on the government's behalf to secure, you know, at least her. We don't, the United States' position is really you can just sort of set that aside. There was, because of the danger, also there was evidence that the state court proceeding had to be pulled because of the uncooperative nature of the witnesses. I think, again, it's a fair, very fair inference and that the uncooperative nature goes to, again, the fear of this defendant who had a violent history. The other thing the district court found here was that all three witnesses would have had Fifth Amendment problems, that they could have been unavailable through the Fifth Amendment, that all three of them would have had to have testified to involvement in at least some role in committing a crime, and so the district court made that explicit finding in its memorandum and order, and that is another thing that this court can take into account. You know, the United States believes that this case is squarely within Farmer and Martin and is actually, as Judge Sachs said in his order, much stronger than even the case in Missouri was allowed to hearsay in evidence of an assault that had happened out in Virginia through his conversations with the Virginia probation officer as well as some police reports. The government at the district court level didn't even try to argue the expense of bringing the people in and that kind of thing, and this court, the panel majority, I understand you were in the dissent on that case, but the panel majority found that it, the panel could do that weighing and find that it was unduly burdensome. There you're talking about people getting on airplanes and flying, but here you're talking about physical danger to, potential physical danger to two witnesses, and even three. It is true that Jermaine Oliver, there was nothing that he himself specifically was afraid, but again, Mr. Sutton, there's a history of violence here, we know that from the evidence that he prior had assaulted Clinicia Douglas sometime before, grievously hurt her. The offense here was a very violent offense. There's evidence he has associates that have gone, so there's this sort of a fear, a blanket of fear that sort of surrounds this defendant and very clearly makes people reluctant to come in, and this is where the rules are sort of structured for this, 32.1, they're structured for a situation like this. This isn't a jury trial, it's not beyond a reasonable doubt. The Sixth Amendment right, it is relaxed here. That is just the way the law and the rules are written, in a sense taking into account this type of situation. In the United States v. Martin, the evidence of a sexual assault of a victim was hearsayed in through the officer who interviewed her, as well as a doctor who examined her, but the evidence of the assault was hearsayed through. Farmer, United States v. Farmer, the same thing, a domestic assault, the evidence came in through the police report and the officers who took the report, but again, you have situations where violent things are happening to people for various reasons, fear, the person not wanting to get involved. The United States is not held in these types of situations because the liberty interest here is only conditional as the courts have held. It's not a, when someone walks in not guilty, they have to go through a jury trial beyond reasonable doubt, they have an absolute liberty interest at that point, but at the point of supervised release, it's a conditional liberty interest. And so here, this is the 32.1 federal rule, and then the cases interpreting it are trying to sort of walk the line between what's fair and also making sure that these issues can be resolved. You know, I would also think that it's relevant here that because of the interviews and the transcripts, in a sense, Mr. Sutton was afforded an opportunity to confront his accusers, because there was a lot of evidence put in about how these people first didn't want to implicate him. They did tell inconsistencies in the stories. The district court noted this. That's sort of twisting around the idea of cross-examination. I mean, these folks told inconsistent stories. I don't know how many lies. He says 10. And in the end, never really landed on a story that really internally made sense. Isn't that really the kind of situation where cross-examination is at its peak of value in trying to determine what happened and whether or not these folks have a true motive to cover up their own involvement and point the finger at somebody else or not? Well, all those issues were brought out. It was brought out and framed for the district court, and the district court made its finding that in the end it found them credible, found the three witnesses credible in their version along with some of the other circumstantial evidence. The district court made its finding, and the United States does not believe it was clearly erroneous that Mr. Sutton had assaulted Mr. Eisenbarth. I see I'm out of time. If there are no further questions, I will step aside. Thank you. Thank you. I'd like to address a couple of the points brought up during the government's argument. We do believe that there is an independent basis that any fear or danger must be objective and based on the facts, rather than simply based on the witness's claim of fear. Judge Kelly did raise that issue with the government, and we believe that is a valid distinction that the record needs to show that, especially in a case like this when the only basis, the only evidence of that comes from the witnesses during the interrogations. And if you do view the interrogations, which this court has access to, you'll see that Detective Buckley had extensive opportunity to confront these witnesses, to threaten these witnesses. We would contend to even somewhat suggest what they should be saying, and Mr. Sutton should have had that same opportunity. If you look at the statement eventually given by Nisha Davis, at some point she just says, I don't know anymore. She says, I passed out, I was drinking heavily, I don't really remember. She does give some statement about Mr. Sutton at some point contacting her and claiming that I think he messed up the victim at a gas station, but then she later admits to fabricating that. So we think this is exactly the kind of case where cross-examination is absolutely essential under these circumstances, and while the protections are less than a jury trial, they're still very significant. Scarpelli notes that in some cases there is simply no alternative to live testimony, and we would suggest that based on the circumstances of this case and the extreme degree of unreliability, repeated fabrications of each of these three witnesses, this is one of those cases. So for those reasons, we'd ask the court to reverse what happened below. Thank you. Well, counsel, thank you for your arguments. The case will be submitted and an opinion will be issued in due course.